Ira Spiro (State Bar No. 67641)
Linh Hua (State Bar No. 247419)
**SPIRO MOORE LLP**
11377 W. Olympic Blvd., 5th Floor
Los Angeles, California 90064
Telephone: (310) 235-2468
Facsimile:  (310) 235-2456
e-mail:   ira@spiromoore.com
          linh@spiromoore.com

Sahag Majarian, II, Esq. (State Bar No. 146621)
**LAW OFFICES OF SAHAG MAJARIAN, II**
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818) 609-0807
Facsimile:  (818) 609-0892
e-mail:   sahagii@aol.com

Attorneys for Plaintiff OSCAR MUNOZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR MUNOZ, individually, and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>     vs.<br><br>CENTRAL PARKING SYSTEM, INC., a Tennessee corporation; and DOES 1 through 10, inclusive,<br><br>           Defendants. | Case No. CV 12-7929 PA (RZx)<br><br>Assigned to the Hon. Percy Anderson<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      February 11, 2013<br>Time:      1:30 p.m.<br>Place:     Courtroom 15 |

*SPIRO MOORE LLP*

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

Please take notice that on February 11, 2013, at 1:30 p.m., in Courtroom 15 of the United States District Courthouse, located at 312 North Spring Street, Los Angeles, CA 90012, Plaintiff Oscar Munoz ("Plaintiff") will and hereby does move the Court for an order granting preliminary approval of the class action settlement ("Stipulation") reached with Defendant Central Parking System, Inc. ("Defendant").  Specifically, Plaintiff moves for an order to:

1.    grant preliminary approval of the terms of the Stipulation as fair, reasonable and adequate under Rule 23 (e) of the Federal Rules of Civil Procedure, including the amount of the settlement; the amount of distributions to class members; the procedure for giving notice to class members; the procedure for opting out of the settlement; and the amounts allocated to the enhancement payment and attorney's fees and costs;

2.    preliminarily certify for settlement purposes the Settlement Class described in the Stipulation as: All persons who were employed by Defendant in California in hourly-paid positions at any time between July 7, 2006 and December 31, 2012.

3.    appoint Plaintiff as class representative for the Settlement Class;

4.    appoint Ira Spiro and Linh Hua of Spiro Moore LLP and Sahag Majarian of the Law Office of Sahag Majarian II as Class Counsel for the Settlement Class;

5.    direct the Settlement Administrator to mail notice to members of the Settlement Class as provided in the Stipulation; and

6.    schedule a final approval and fairness hearing on a date approximately 170 days after preliminary approval (July 29, 2013 is proposed) to consider whether the Stipulation should be finally approved

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

SPIRO MOORE LLP

1  as fair, reasonable and adequate under Rule 23 (e) of the Federal Rules of

2  Civil Procedure and to rule on the motion for attorney's fees, costs and

3  enhancement award submitted by Plaintiff.

4  Plaintiff's motion is based on this Notice, the attached Memorandum of

5  Points and Authorities, the Declaration of Linh Hua submitted herewith, all other

6  pleadings and papers on file in this action, and any oral argument or other matter

7  that may be considered by the Court.

8  This motion is made following the conference of counsel pursuant to L.R.

9  7-3 which took place on December 5, 2012.

10

11  Dated: January 7, 2013                    Respectfully submitted,

12

13                                           SPIRO MOORE LLP

14

15                                 By:   __/s/_____

16                                       Linh Hua

17                                       Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................1

II.   BACKGROUND ..........................................................1

III.  SETTLEMENT TERMS.................................................2

IV.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL ....................4

    A.   Plaintiff's Claims Merit Class Action Treatment ....................... 6

        1.   Numerosity ...................................................... 6

        2.   Commonality and Predominance of Common Issues ...................... 7

        3.   Typicality........................................................ 8

        4.   Adequate Representation............................................ 9

        5.   Superiority ..................................................... 10

    B.   The Settlement is Fair, Reasonable and Adequate................................... 11

        1.   The Value Of The Settlement to Class Members Is Fair, Reasonable and Adequate ............................................... 13

        2.   The Agreed Upon Fees And Costs Are Reasonable ........................ 14

        3.   The Enhancement Award is Reasonable ......................... 16

        4.   The Class Notice........................................... 17

V.    THE COURT SHOULD SCHEDULE A FAIRNESS HEARING ...............19

VI.  CONCLUSION...........................................................19

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

SPIRO MOSS LLP

# TABLE OF AUTHORITIES

**FEDERAL DECISIONAL AUTHORITY**

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ........................... 5

*Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 ....................... 10

*Armstrong v. Board of School Directors of the City of Milwaukee*,
  616 F.2d 305 (6th Cir. 1980)............................................................................ 5

*Baldwin & Flynn v. Nat'l. Safety Associates*,
  149 F.R.D. 598 (N.D. Cal. 1993) ..................................................................... 6

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ...................................... 6, 7, 8

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
  917 F.2d 1171 (9th cir. 1990) .......................................................................... 9

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001)..................................................................... 8, 10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................... 6

*Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747 (M.D. Fla. 1998) ........ 10

*Hammon v. Barry*, 752 F.Supp 1087 (DDC 1990) ...................................... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................... 5, 7, 8, 9

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)............................ 9

*In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (ND GA 1979) ...... 12

*In re Cendant Corp., Derivative Action Litigation*,
  232 F.Supp.2d 327 (D. N.J. 2002) ................................................................. 14

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986) ............. 6

*In re Immune Response Securities Litigation*,
  497 F.Supp.2d 1166 (S.D. Cal. 2007) ...................................................... 12, 13

*In re Mercury Interactive Securities Litigation*,
  618 F.3d 988 (9th Cir. 2010)................................................................... 15, 18

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993)..... 18

SPIRO MOSS LLP

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*In re Southern Ohio Correctional Facility*,

   175 F.R.D. 270 (S.D. Ohio 1997) ................................................................ 16

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ...................... 16

*Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986) ........................................... 6

*Linney v. Cellular Alaska Partnership*,

   1997 WL 450064 (N.D. Cal. 1997) ........................................................ 12, 13

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,

   834 F.2d 677 (7th Cir. 1987) ...................................................................... 12

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980) ................................ 17

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .............. 17

*Officers for Justice v. Civil Service Commission of City and County of San*

   *Francisco*, 688 F.2d 615 (9th Cir. 1982) ................................................ 11, 12

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ..... 14, 15

*Pridd v. Edelman*, 883 F.2d 438 (6th Circuit 1989) ......................................... 12

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986) .................................. 6

*Silber v. Mabo*, 18 F.3d 1449 (9th Cir. 1994) .................................................. 17

*Six Mexican Workers v. Arizona Citrus Growers*,

   904 F.2d 1301 (9th Cir. 1990) .................................................................... 14

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,

   79 F.R.D. 571 (ED PA 1978) ...................................................................... 12

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...........................5, 11, 12, 15

*Strube v. American Equity Inv. Life Ins. Co.*,

   226 F.R.D. 688 (M.D. Fla. 2005) ................................................................ 10

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996) .............................. 10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .......................... 4

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995).............. 16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)............................. 14

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005)..................... 6, 8

SPIRO MOSS LLP

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001) ........... 8

RULES

Fed. R. Civ. P. 23 ..........................................1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 17, 18

CALIFORNIA STATUTES

Labor Code § 203 ...................................................................................... 4, 8, 15

Labor Code § 226 ...................................................................................... 8, 9, 15

TREATISES

*Manual for Complex Litigation Second* § 30.44 (1985) ....................................... 4

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial
§ 10:573 (The Rutter Group 2006)................................................................... 6

SPIRO MOSS LLP

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

SPIRO MOORE LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This is a putative wage and hour class action on behalf all individuals employed in hourly-paid positions who work for Defendant in the State of California at any time between July 7, 2006 and December 31, 2012.  This is a case based on various allegations of wage and hour violations by Named Plaintiff Oscar Munoz ("Plaintiff"), regarding minimum wage, overtime, meal periods, reporting time, call-in pay, final pay, and wage statements.  Defendant Central Parking System, Inc. ("Defendant") disputes the claims.

After months of extensive discovery, partial briefing of class certification issues, and finally a private mediation, Plaintiff and Defendant (Plaintiff and Defendant collectively referred to herein as the "Parties") reached a proposed class action settlement valued at $1,200,000, with no reversion to Defendant.

Both Parties believe the Settlement to be fair and reasonable, resulting from factual and legal analyses and arms-length negotiations.  Therefore, Plaintiff requests certification of a Settlement Class pursuant to Fed. R. Civ. P. 23 and preliminary approval of the proposed class action settlement.

**II.    BACKGROUND**

Plaintiff filed the present putative class action lawsuit on July 7, 2010 in Los Angeles County Superior Court against Defendant.  The current operative complaint in the Action alleges that Defendant failed to pay all minimum wages, failed to timely pay all wages for overtime, reporting time and call-in pay, failed to provide meal periods, and failed to issue accurate wage statements.

On August 19, 2010, Defendant filed a Notice of Removal, and the matter was *sua sponte* remanded to state court on August 30, 2012.  The Parties engaged in extensive formal discovery which included several sets of requests for documents, several sets of interrogatories, the deposition of three of Defendant's

1   designated corporate representatives, the production of over 3,000 documents,

2   the production of hundreds of thousands of lines of data regarding pay data and

3   time records, and expert statistical analyses of the records in support of class

4   certification.

5       After the parties conducted extensive investigations, they commenced

6   briefing class certification issues.  On August 17, 2012, Plaintiff filed his Motion

7   for Class Certification. On September 7, 2012, Defendant filed an Opposition to

8   Plaintiff's Motion for Class Certification.

9       On September 13, 2012, Defendant filed a Notice of Removal in the United

10  States District Court for the Central District of California, and this case was re-

11  assigned to the Honorable Percy Anderson pursuant to Section 6.0 of General

12  Order 08-05. On November 28, 2012, after a private mediation with Hon. Carl J.

13  West (Ret.), the parties reached an agreement on the material terms of a proposed

14  class action settlement that would fully resolve this matter.

15      On November 29, 2012, Plaintiff immediately reported the settlement to the

16  Court Clerk and filed a Notice of Proposed Class Action Settlement to notify the

17  Court. On December 5, 2012, the Court granted in part and denied in part the

18  Parties' stipulation, ordering the Parties to "file either a motion for preliminary

19  approval of a class action settlement or a motion for class certification pursuant to

20  Local Rule 23-3" on or before January 7, 2013.

21  **III.   <u>SETTLEMENT TERMS</u>**

22      Due to the holiday season and the absence of key signatories on the

23  Settlement Agreement, the Parties intend to file a supplemental declaration

24  attaching the fully executed Settlement Agreement, subject to Court approval.

25  The key settlement terms are as follows:

26      -   The Parties stipulate to class certification for purposes of settlement

27          only.

28

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]**

SPIRO MOORE LLP

- Defendant will pay $1,200,000 as the Gross Settlement Amount for payment to Settlement Class Members, the Labor Workforce and Development Agency, Attorneys' Fees and Costs, Enhancement Award to the Named Plaintiff, and the Settlement Administrator. Defendant will pay employer's tax obligations separate and in addition to the Gross Settlement Amount.

- No money from the Gross Settlement Amount will revert to Defendant.

- The Release will be for all claims, causes of action, damages, restitution, penalties and other relief based on the allegations of wrongdoing which were alleged or could have been alleged in the complaint for failure to pay minimum wage, failure to pay overtime compensation, failure to provide meal periods, violation of Wage Order No. 5, failure to provide accurate itemized wage statements, violation of California's Unfair Business Practices law, penalties under California's Private Attorney General Act and all derivative claims for interest, attorneys' fees, costs and penalties that arose during the period from July 7, 2006 to December 31, 2012.

- The Settlement Class is defined as all persons who were employed by Defendant in California in hourly-paid positions at any time during the period from July 7, 2006 to December 31, 2012.

- Plaintiff will request an Enhancement Award of $15,000.

- Plaintiff's counsel will request attorneys' fees equal to 25% of the Gross Settlement Amount, plus costs.

- $10,000 will be allocated to penalties under the Private Attorneys General Act of 2005. 75% of that allocation ($7,500) will be paid to the LWDA and 25% ($2,500) will remain as part of the Net Settlement Amount for payment to Settlement Class Members.

SPIRO MOORE LLP

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]**

- 5% of the Net Settlement Amount will be evenly distributed to former employees for claims under Labor Code section 203.
- Current employees are not required to submit claims to receive money from the Settlement.
- Former employees have 60 days to submit claims to receive money from the Settlement.
- The class size includes approximately 6,000 employees.
- Defendant denies any and all liability.

## IV.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL

The law favors settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and the rigors of formal litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).   These concerns apply with particular force in a case such as this, where allegedly illegal practices potentially affected approximately 6,000 employees, but in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court.  This is done in two steps:  (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections.  The *Manual for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements … if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which

SPIRO MOORE LLP

1
2

    evidence may be presented in support of and in opposition to the
    settlement.

3
4
5
6

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

7
8
9
10
11
12
13
14
15
16
17
18

    "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)]. "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

19
20
21
22
23
24
25
26

    At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

27
28

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]**

SPIRO MOORE LLP

### A.    Plaintiff's Claims Merit Class Action Treatment

Plaintiff need only make a "prima facie showing" of the requirements of Rule 23.[1]  In determining the propriety of class certification, a court may not delve into the underlying merits of the claims.  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).  Under these standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1.    Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005).  "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross*, 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).  *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified

---

[1] *See*, Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:573 (The Rutter Group 2006).

SPIRO MOORE LLP

1   where plaintiffs did not establish exact size, but demonstrated that class would

2   "obviously be sufficiently numerous").

3       In this action, the Class is composed of approximately 6,000 current and

4   former employees.  It is sufficiently numerous that the individual joinder of all

5   members is impracticable.

6           **2.**        **Commonality and Predominance of Common Issues**

7       Rule 23(a)(2) requires that there be "questions of law or fact common to

8   the class."  This commonality requirement is "construed permissively."  *Hanlon*

9   *v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Plaintiff need not

10  demonstrate that all questions of fact and law are common.  "The existence of

11  shared legal issues with divergent factual predicates is sufficient."  *Id*.  Where a

12  class is united by a common interest in determining whether a defendant's broad

13  course of conduct is actionable, commonality is not defeated "by slight

14  differences in class members' positions."  *Blackie, supra*.

15      In this litigation, all Class Members have shared a common interest in

16  determining whether Defendant had a policy of not paying Class Members

17  correctly for all hours worked; whether Defendant provided meal periods to its

18  employees; whether Defendant violated the itemized wage statement provisions of

19  Labor Code § 226 by not providing accurate information as to wages; and whether

20  Defendant's policies and practices violated California Business & Professions

21  Code §§ 17200 *et seq*. Common sub-issues include the question of whether

22  Defendant's conduct was willful under Labor Code § 203.

23      Given the permissive standard that courts in the Ninth Circuit employ

24  when determining commonality, certification of the Class for settlement

25  purposes is appropriate as Rule 23(a)(2) is satisfied.

26      Once it is established that common issues of law or fact exist, certification

27  analysis, for Rule 23(b)(3) purposes, next examines whether those common

28  issues predominate. The predominance inquiry focuses on whether the class is

SPIRO MOORE LLP

1  "sufficiently cohesive to warrant adjudication by representation."

2  *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162

3  (9th Cir. 2001).  Central to predominance is "the notion that the adjudication of

4  common issues will help achieve judicial economy."  *Zinser v. Accufix Research*

5  *Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).  When common questions

6  represent a significant aspect of the case and they can be resolved for all

7  members of the class in a single adjudication, there is clear justification for

8  handling the dispute on a representative rather than on an individual basis."

9  *Hanlon*, 150 F.3d at 1022.  It is well settled that the need for determining

10  differing amounts of damages suffered by different class members does not

11  preclude class certification.  *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at

12  613.

13  There are common issues that may predominate over individual issues in

14  this litigation.  For example: 1) whether Defendant failed to timely pay for all

15  hours worked at the minimum wage rate or overtime rate; 2) whether

16  Defendant's meal period policy violated the California Labor Code; 3) whether

17  Defendant had a policy and practice of providing Class Members with itemized

18  wage statements that were inaccurate in violation of Labor Code § 226; and, 4)

19  whether Defendant failed to pay all wages due and payable to former employees

20  within the times specified under the California Labor Code; and, 5) whether

21  Defendant's policies and practices violated California Business & Professions

22  Code §§ 17200 *et seq*.

23  **3.    Typicality**

24  Rule 23(a)(3) requires that the representative plaintiff have claims "typical

25  of the claims . . . of the class."  This factor is also construed permissively.  *See*

26  *Hanlon*, 150 F.3d at 1019-20.  Representative claims are typical "if they are

27  reasonably co-extensive with those of absent class members; they need not be

28  identical."  *Id*. at 1020.  In other words, named plaintiffs need not be "identically

SPIRO MOORE LLP

situated" with all other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members." *Id.* Here, Plaintiff is raising the same claims as the putative class members and moved to certify claims on behalf of similarly situated employees.

### 4.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." Adequacy may be established by the mere fact that counsel are experienced practitioners. *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interest between Plaintiff and Class Members. There are similarities in the claims asserted and remedies sought by Class Members and Plaintiff. Defendant did not assert unique defenses against Plaintiff, and it did not assert against any other Class Member. Also, there are no conflicts with Plaintiff's counsel.

Plaintiff's counsel has substantial class action experience and can adequately represent the Class. They have been appointed class counsel in many wage and hour class actions against major employers.

SPIRO MOORE LLP

5.     **Superiority**

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[2]  Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious."  *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares a class action with alternative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that it satisfies the superiority requirement.  *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly served as the only method

---

**[2]** Rule 23 (b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]**

SPIRO MOORE LLP

1   that would "'permit the plaintiffs to pool claims which would be uneconomical

2   to litigate individually.'"  *Id*. at 1163.

3       The class action is superior here as it is on the only method that will allow

4   Class Members "to pool [their individual] claims which would be uneconomical

5   to litigate individually."

6       The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class

7   certification.  It is difficult to believe that any Class Members have an interest in

8   individually controlling the prosecution of separate actions, given the relatively

9   small sums involved for any one Class Member.  Any Class Member who wants

10  to pursue a separate action can opt out of the Settlement.

11      Also, it is desirable to concentrate the issues in this forum.  The class is

12  narrowed to hourly-paid individuals who work in California, and the Settlement

13  allows all currently employed individuals to resolve class claims against

14  Defendant.  Current employees need not submit claims to receive money from

15  this Settlement, and former employees have 60 days to submit claims to receive

16  money from this Settlement.

17      **B.**     **The Settlement is Fair, Reasonable and Adequate**

18      No single criterion determines whether a class action settlement meets the

19  requirements of Rule 23(e).  The Ninth Circuit has directed district courts to

20  consider a variety of factors without providing an "exhaustive list" or suggesting

21  which factors are most important.  *See, Staton*, 327 F.3d at 959.  "The relative

22  degree of importance to be attached to any particular factor will depend upon and

23  be dictated by the nature of the claim(s) advanced, the type(s) of relief sought,

24  and the unique facts and circumstances presented by each individual case."

25  *Officers for Justice v. Civil Service Commission of City and County of San*

26  *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

27      Due to the impossibility of predicting any litigation result with certainty, a

28  district court's evaluation of a settlement essentially amounts to "'an amalgam of

SPIRO MOORE LLP

SPIRO MOORE LLP

1   delicate balancing, gross approximations and rough justice.'" *Id*. at 625.  The

2   ultimate touchstone, however, is whether "class counsel adequately pursued the

3   interests of the class as a whole." *Staton*, 327 F.3d at 961.

4        As the Ninth Circuit explained in *Officers for Justice*, the district court's

5   role in evaluating a class action settlement is therefore tailored to meet that

6   narrow objective. *Officers for Justice*, 688 F.2d at 625.  Review under Rule

7   23(e) "must be limited to the extent necessary to reach a reasoned judgment that

8   the agreement is not the product of fraud or overreaching by, or collusion

9   between, the negotiating parties." *Id*.  Accordingly, the Ninth Circuit will not

10  reverse a district court's approval of a class action settlement "unless the fees

11  and relief provisions clearly suggest the possibility that class interests gave way

12  to self interest." *Staton*, 327 F.3d at 961.

13       There is a presumption that the negotiations were conducted in good faith.

14  Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars*

15  *Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677,

16  682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the

17  proponents, particularly where, as here, settlement has been reached with the

18  participation of experienced counsel familiar with the litigation. *Hammon v.*

19  *Barry*, 752 F.Supp 1087 (DDC 1990); *In re Armored Car Anti-Trust Litigation*,

20  472 F.Supp 1357 (ND GA 1979); *Sommers v. Abraham Lincoln Federal Savings*

21  *& Loan Association*, 79 F.R.D. 571 (ED PA 1978).  The fact that settlement

22  results from arms-length negotiations following "relevant discovery" creates "a

23  presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*,

24  1997 WL 450064 (N.D. Cal. 1997) at *5; *See In re Immune Response Securities*

25  *Litigation*, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (settlement approved

26  where informal discovery gave the parties a clear view of the strength and

27  weaknesses of their cases).

28

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]**

1    Here, the Parties reached a non-collusive settlement after months of

2  extension discovery, partial briefing of class certification issues, and a private

3  mediation with mediator Hon. Carl J. West (Ret.).  Obtaining class certification

4  and establishing liability posed significant hurdles for the class that justified the

5  settlement.  The Stipulation falls well within the range of reasonable outcomes

6  and merits approval under Rule 23(e).

7             1.      **The Value Of The Settlement to Class Members Is Fair,**

8                     **Reasonable and Adequate**

9    The Parties reached a Settlement in good faith after negotiating at arm's

10  length after exhaustive discovery on class certification issues and some merits

11  issues.  *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F.Supp.2d

12  1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery

13  gave the parties a clear view of the strength and weaknesses of their cases).  The

14  fact that settlement results from arms length negotiations following "relevant

15  discovery" creates "a presumption that the agreement is fair."  *Linney v. Cellular*

16  *Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

17    Defendant strongly denies any liability and the propriety of class

18  certification for any reason other than settlement.  Continued litigation of this

19  lawsuit presented Plaintiff and Defendant with substantial legal risks that were

20  (and continue to be) very difficult to assess.  For example, the wilfulness element

21  required for violations of Labor Code §§ 203 and 226 are challenging to

22  establish at the liability stage.

23    Under these circumstances, the benefits available to class members in

24  return for releasing their claims against Defendant are fair and reasonable.  The

25  value of the settlement is also improved by the fact that claim submissions are

26  not required by current employees, and no money from the $1,200,000 Gross

27  Settlement Amount will revert back to Defendant.  For the 6,000 members of the

28

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]**

SPIRO MOORE LLP

1  Class, the value of this amount compared to the maximum potential recovery

2  reflects a fair compromise well within the range of reasonableness.

3      By obtaining reasonable value for their claims in light of the substantial

4  risks of litigation, Plaintiff clearly achieved a fair settlement that merits

5  approval.  See, *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d

6  327 (D. N.J. 2002) (approving settlement which provided 2% value compared to

7  maximum possible recovery).

8              **2.    The Agreed Upon Fees And Costs Are Reasonable**

9                  **a)    *Plaintiff seeks no more than 25% in fees.***

10     The compensation sought for Plaintiff's counsel is also fair and

11  reasonable.  The Ninth Circuit has directed that, to determine what constitutes a

12  fair and reasonable percentage of the settlement for purposes of calculating

13  common fund attorneys' fees, the courts should use a "benchmark" percentage of

14  25% of the total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,

15  272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.

16  2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311

17  (9th Cir. 1990).  Here, the Settlement Fund obtained through the efforts of

18  Plaintiff's counsel is $1,200,000 as the Gross Settlement Amount.  There are

19  additional monetary benefits in that no portion of the Gross Settlement Amount

20  will revert to Defendant, and Defendant will pay the employer's tax withholding

21  separate and in addition to this $1,200,000 amount.  Adhering to the benchmark

22  established by the Ninth Circuit, Plaintiff's counsel has agreed to accept no more

23  than $300,000 in fees.  Plaintiff's counsel also request costs and expenses for

24  litigating this action.

25                  **b)    *A lodestar crosscheck is unnecessary in this instance.***

26     Plaintiff will provide the Court with information for the purposes of

27  calculating attorney's fees under the lodestar method should the Court so desire

28  for ruling on Plaintiff's fee application at the final fairness hearing. However, the

SPIRO MOORE LLP

Ninth Circuit has recognized that the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002). The Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on the reasonableness of fees based on a percentage of recovery method if a district court in its discretion chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly." *Id*. That is surely not the case here. Based on the small class size, Plaintiff's counsel had chance of obtaining a substantial fee award absent a verdict in Plaintiffs' favor at trial.

The percentage of recovery method "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Staton*, 327 F.3d 938, 967 (9th Cir. 2003). This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of others. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

It is fair that every class member who benefits from the opportunity to claim a share of the settlement pay his or her pro rata share of attorney's fees, and Plaintiff's request for fees for the benchmark rate of 25% means that Plaintiff seeks a reasonable amount of fees. Equitable considerations dictate that Plaintiff's counsel be rewarded for achieving a settlement that confers benefits among so many people, especially without protracted litigation up to trial. The result achieved by Plaintiff's counsel merits an award of attorney's fees equal to 25% of the common non-reversionary fund in this case without any lodestar consideration or cross check.

Finally, as required by *In re Mercury Interactive*, 618 F.3d 988 (9th Cir. 2010), Plaintiff will file a motion for fees and costs after the Court sets a hearing date for Plaintiff's Motion for Final Approval of Class Action Settlement, and the proposed Notice advises Class Members of how to obtain a copy of this motion.

### 3.   The Enhancement Award is Reasonable

An enhancement award serves to reward the named plaintiff for the time and effort expended on behalf of the class, and for exposing themselves to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, Plaintiff's counsel requests that the Court grant Plaintiff an enhancement award of $15,000 in exchange for his efforts in assisting with litigation and in exchange for a mutual general release of claims with Defendant. The amount of the enhancement award requested for Plaintiff is relatively small compared to the amount of settlement funds available for distribution to class members.

Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement achieved by Plaintiff.  Additionally, Plaintiff

SPIRO MOORE LLP

1    was actively involved in the litigation and settlement negotiations of this Action.

2    He worked diligently with counsel to respond to discovery, conferred with

3    counsel regarding settlement negotiations, attended the private mediation on

4    November 28, 2012, and has maintained close communication with counsel over

5    the phone and in-person at every stage of the litigation.

6

7                    **4.       The Class Notice**

8          Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3),

9    the court must direct to class members the "best notice practicable" under the

10   circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice

11   be "actually received."  *Silber v. Mabo*, 18 F.3d 1449, 1454 (9th Cir. 1994).

12   Notice need only be given in a manner "reasonably calculated, under all the

13   circumstances, to apprise interested parties of the pendency of the action and

14   afford them an opportunity to present their objections."  *Mullane v. Central*

15   *Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

16         Here, the Parties have agreed to provide a notice through first class mail to

17   class members, whose last known addresses are known to Defendant.  If any

18   notices are returned with new forwarding addresses, they will be re-mailed to the

19   current address.  This method of notice is sufficient.  Rule 23(c)(2)(B) also sets

20   forth requirements regarding the content of the notice.  The notice must

21   concisely and clearly state in plain, easily understood language:

22        •   the nature of the action;

23        •   the definition of the class certified;

24        •   the class claims, issues, or defenses;

25        •   that class member may enter an appearance through counsel;

26        •   that the court will exclude from the class any member who requests

27            exclusion, stating when and how members may elect to be excluded;

28            and

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]**

SPIRO MOORE LLP

SPIRO MOORE LLP

- the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed notice attached as an exhibit to the Stipulation complies fully with Rule 23(c)(2)(B).  Courts routinely approve class notices even when they provide only general information about a settlement.  *See*, *e.g*., *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" sufficient); *In re Michael Milken & Assocs. Sec. Litig*., 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally.")  The class notice drafted by the Parties provides more than adequate notice about the Settlement and parallels the sample notice provided by the Federal Judicial Center.

The Parties have also agreed to provide class members with notice of, and access to, Plaintiff's motion for attorney's fees.  Under Rule 23(h), class members must be given notice of the plaintiff's fee application separate and apart from the general notice given to the class after preliminary approval.  *See*, *In Re Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).  To comply with this requirement, no later than 14 days prior to the end of the period for objecting to the Settlement, Class Counsel shall file its Motion for an award of Class Counsel Fees and Costs.  The Motion shall be set for hearing on the date set for hearing of Plaintiff's Motion for Final Approval of Class Action Settlement.  Upon filing the Motion, Class Counsel shall make the Motion available for download on its website, located at www.spiromoore.com, shall advise Class Members in the Class Notice of its eventual availability on Class Counsel's website, and shall also advise Class Members that the Motion can be obtained from the Court files after appropriate request.  The notice procedure satisfies the due process requirements of Rule 23(h) established by the Ninth Circuit in *Mercury Interactive* (objection period for fee motion must end after motion is filed).

1    **V.      THE COURT SHOULD SCHEDULE A FAIRNESS HEARING**

2           The last step in the settlement approval process is the fairness hearing,

3    where the Court makes a final determination about the propriety of settlement.

4    Plaintiff requests that the fairness hearing in this case be scheduled for 170 days

5    after issuance of the Court's Order granting preliminary approval of the

6    Settlement.  Under the Settlement, Defendant will mail out class notice.   Class

7    members have 60 days after mailing of the notice to submit exclusions or

8    objections to the settlement, and former employees will have 60 days to submit

9    claim forms.  Current employees do not need to submit claims to receive money

10   from this Settlement.  Plaintiff proposes that the final approval hearing should be

11   scheduled for July 29, 2013.

12

13   **VI.     CONCLUSION**

14          Plaintiff negotiated a settlement that provides a significant amount of

15   money to class members (and no money will revert to Defendant). It is fair and

16   reasonable, especially given the claims, the potential defenses to those claims,

17   and the risks at both the stages for class certification and trial.  Plaintiff asks the

18   Court to grant preliminary approval of the settlement and adopt the proposed

19   order submitted herewith.

20

21   Dated: January 7, 2013                    Respectfully submitted,

22                                             SPIRO MOORE LLP

23

24                                             By: ____/s/_____

25                                                 Linh Hua

26                                             Attorneys for Plaintiff

27

28

SPIRO MOORE LLP

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]**