1  Ira Spiro, Esq. (State Bar No. 67641)
2  Linh Hua, Esq. (State Bar No. 247419)
   **SPIRO MOORE LLP**
3  11377 W. Olympic Blvd., 5th Floor
   Los Angeles, California 90064-1683
   Telephone: (310) 235-2468
4  Facsimile:  (310) 235-2456
   e-mail:    ira@spiromoore.com
5             linh@spiromoore.com

6  Sahag Majarian, II, Esq. (State Bar No. 146621)
7  **LAW OFFICES OF SAHAG MAJARIAN, II**
   18250 Ventura Boulevard
   Tarzana, California 91356
8  Telephone: (818) 609-0807
   Facsimile: (818) 609-0892
9  e-mail:    sahagii@aol.com

10 Attorneys for Plaintiff Oscar Munoz

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14 OSCAR MUNOZ, individually, and on          Case No. CV 12-7929 PA (RZx)
   behalf of all others similarly situated,
15                                            Assigned to the Hon. Percy Anderson
                Plaintiff,
16                                            **PLAINTIFF'S NOTICE OF**
        vs.                                  **MOTION AND MOTION FOR**
17                                           **CLASS CERTIFICATION**
   CENTRAL PARKING SYSTEM, INC., a
18 Tennessee corporation;                    **HEARING**
   and DOES 1 through 10, inclusive,         Date: February 11, 2013
19                                           Time: 1:30 p.m.
                Defendants.                  Ctrm: 15
20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

**TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 11, 2013 at 1:30 p.m., in Department 15 of this Court located at 312 North Spring Street, Los Angeles, CA 90012, pursuant to Code of Civil Procedure § 382, Plaintiff Oscar Munoz ("Plaintiff") will move the Court for an Order granting class certification, pursuant to Federal Rules of Civil Procedure ("FRCP") 23(c)(1).

This motion is brought on the grounds that this action properly may be certified as a class action under FRCP Rule 23 (a) in that:  (a) the proposed Classes are so numerous (numbering in the thousands) that joinder of all members of the Classes in this action is impracticable; (b) there are questions of law and fact which are common to the members of the Classes; (c) the claims of Plaintiff are typical of the claims of the members of the Classes he seeks to represent; and (d) Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes.

This motion is brought on the further grounds that the Classes properly may be certified under FRCP 23 (b)(3) in that: (a) the questions of law and fact common to the members of the Classes predominate over the questions of law and fact, if any, which affect only individual members of the Classes; and (b) a class action is superior to any other available method for the fair and efficient adjudication of the claims for relief asserted in this action.

The motion will be based upon this notice, the attached memorandum of points and authorities, the Declarations of Linh Hua, Oscar Munoz, Robert L. Fountain, Ph.D., filed concurrently herewith, the records and files in this action, and any other further evidence or argument that the Court may receive at or before the hearing.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SPIRO MOORE LLP

   This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 19, 2012.


Dated: January 7, 2013        Respectfully submitted,

             SPIRO MOORE LLP


          By: /s/ _____
             Linh Hua

             Attorneys for Plaintiff Oscar Munoz

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF THE ARGUMENTS ..................1

II.  PROPOSED CLASSES ...................................................................2

III. STATEMENT OF FACTS IN SUPPORT OF CLASS CERTIFICATION ....2

    A.   CPS's Recordkeeping System ..................................................2

    B.   Sample of Time and Pay Records .............................................3

IV.  CLASS CERTIFICATION IS APPROPRIATE UNDER FEDERAL RULE

    OF CIVIL PROCEDURE 23 ...........................................................4

    A.   This Case Meets the Requirements of Fed. R. Civ. P. 23(a). ..................6

        1.   The Proposed Class Is Sufficiently Numerous To Satisfy The

            "Numerosity" Requisite Of Rule 23(a). ...............................6

        2.   Common Issues of Law and Fact Exist, Satisfying The

            Requirements Of Rule 23(a)(2). .......................................7

        3.   Plaintiff's Claims Are Typical Of The Class He Seeks To

            Represent, Satisfying Rule 23(a)(3). ..................................9

        4.   The Proposed Class Representatives And Their Counsel Will

            Adequately Represent The Interests Of The Class.........................10

    B.   Certification Under Rule 23(b)(3) is Appropriate...................................11

        1.   Common Legal Issue: CPS's Rounding Policy is Unlawful

            Because it, Over a Period of Time, Fails to Compensate Employees

            for All Time Actually Worked ........................................12

        2.   Common Factual Issue: CPS's Uniform Rounding Policy ..............15

        3.   Common Legal Issue: CPS's Meal Policy Violates Statutory

            Requirements ................................................................17

        4.   Common Factual Issue: Uniform Meal Policy................................18

        5.   Common Legal Issue: Wage Statements and UCL ..........................19

SPIRO MOORE LLP

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SPIRO MOORE LLP

6.    Common Factual Issue: Wage Statements .......................................20
C.   CLASS-ACTION TREATMENT IS SUPERIOR TO INDIVIDUAL
ACTIONS.................................................................................................20
1.    Based On The Nature And Size Of The Claims, Class Members
Have Little Incentive To Bring Individual Actions. ........................21
2.    Concentrating Class Claims in a Single Forum Is Desirable. ..........22
3.    No Significant Management Difficulties Are Present.......................23
4.    Insulation From Fear of Retaliation by the Employer Renders
Wage and Hour Class Actions Superior...........................................24
5.    Uncertainty About Legal Rights Would Deter Individual Actions,
Rendering Class Resolution Superior...............................................24
6.    Class Actions Provide For Uniform Enforcement Of Employees'
Rights................................................................................................25
V.    CONCLUSION..................................................................................................25

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1

# TABLE OF AUTHORITIES

2

3

**FEDERAL DECISIONAL AUTHORITY**

4

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................. 11, 21

5

*Arthur Young & Co. v. United States Dist. Court*,

6

    549 F.2d 686 (9th Cir. 1977), *cert. denied* 434 U.S. 829 (1977) ......................... 5

7

*Austin v. Amazon.Com, Inc.*, 2010 WL 1875811 (W.D. Wash. 2010).............. 13, 14

8

*Barragan v. Evanger's Dog and Cat Food Co., Inc.*,

9

    259 F.R.D. 330 (N.D. Ill. 2009) ........................................................................ 12

10

*Blackie v. Barrack*,

11

    524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976)............... 5, 6, 23

12

*Bricker v. Planet Hollywood New York, L.P.*,

13

    2009 WL 2603149 (S.D. N.Y. 2009) .................................................................. 12

14

*Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) ........................... 13

15

*Charlebois v. Angels Baseball, LP*, SACV 10-0853 DOC ANX,

16

    2011 WL 2610122 (C.D. Cal. June 30, 2011)....................................................... 7

17

*Dominguez v. Schwarzenegger*, 270 F.R.D. 477 (N.D. Cal. 2010)......................... 6

18

*duPonte Glore Forgan, Inc. v. American Telephone and Telegraph Co.*,

19

    69 F.R.D. 481 (S.D.N.Y. 1975) ........................................................................ 21

20

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974)......................................... 5, 21

21

*Eldred v. Comforce Corp.*, 2010 WL 812698 (N.D. N.Y. 2010)........................... 12

22

Elliot v. Spherion Pacific Work, LLC (C.D.Cal.2008) 572 F.Supp.2d 1169.......... 19

23

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................... 4, 5, 6

24

*Eyles v. Uline, Inc.*, 2009 WL 2868447 (N.D. Tex. Sept. 4, 2009) ....................... 14

25

*Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d 819 (E.D. Mich. 2009).... 13

26

*Flott v. Hair Salons, Inc.*, 2010 WL 5093923 (D. Neb. 2010) ............................... 13

27

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir.1997)........... 7

28

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

SPIRO MOORE LLP

*General Tel. Co. v. EEOC*, 446 U.S. 318 (1980) ...................................................... 6

*Gil v. Solectron Corp.*. 2009 WL 88346 (N.D. Cal. 2009).................................... 13

*Gonzalez v. Farmington Foods, Inc.*, 296 F.Supp.2d 912, 933 (N.D. Ill, 2003)..... 14

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996)................................ 4, 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....6, 7, 8, 9, 10, 11, 21, 22

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).............................. 6, 9

*Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412 (W.D. Wash. 2003) ...................... 7, 8

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,

 691 F.2d 1335 (9th Cir. 1982).................................................................. 5

*In re Mego Fin. Corp. Sec. Litig.* 213 F.3d 454 (9th Cir. 2000)........................... 10

*Johns v. Bayer Corp.*, 09CV1935 AJB POR,

 2012 WL 368032 (S.D. Cal. Feb. 3, 2012) ...................................... 5

*Jordan v. Los Angeles County*, 669 F.2d 1311 (9th Cir.1982) ............................ 7, 9

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

 244 F.3d 1152 (9th Cir. 2001)................................................................. 11

*Longcrier v. HL-A Co., Inc.*, 595 F.Supp.2d 218 (S.D. Ala. 2008) ...................... 14

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) .................... 5, 6

*Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224 (M.D. Fla. 2008).................. 12

*Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983) .......................... 5

*Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482 (C.D.Cal. 2006) ................... 8, 11

*Nicholson v. UTI Worldwide*, 2011 WL 1775726 (S.D. Ill. 2011) ........................ 13

*Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009)................. 12

*Ross v. RBS Citizens, N.A.*, ___ F.3d ___, 10-3848,

 2012 WL 251927 (7th Cir. Jan. 27, 2012) ................................................ 4

*Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985) ................................................ 9

*Slaven v. BP America, Inc.*, 190 F.R.D. 649 (C.D.Cal.2000) .................................. 7

*Sloan v. Renzenberger, Inc.*, 2011 WL 1457368 (D. Kan. 2011) .......................... 13

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SPIRO MOORE LLP

*Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ................................... 5, 10

*Stearns v. TicketMaster Corp.*, 655 F.3d 1013 (9th Cir.2011) ............................... 6

*Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246 (N.D. Cal. 1978) .... 9

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
209 F.R.D. 159 (C.D. Cal. 2002) ....................................................................... 11

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.
Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802 (9th
Cir.2010) ............................................................................................................. 5

*Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ..................... 5, 20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (June 20, 2011) ........................... 4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/Mastermoney
Antitrust Litig.)*, 280 F.3d 124 (2nd Cir. 2001) .................................................. 11

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998)................................................... 10

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.),
amended by 273 F.3d 1266 (9th Cir.2001) .......................................................... 4


**CALIFORNIA DECISIONAL AUTHORITY**

*Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715 (2004) .............................. 23, 24

*Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381................................... 24

*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012)..................... 17, 19

*Capitol People First v. Dept. of Developmental Serv.*,
155 Cal. App. 4th 676 (2007) ............................................................................ 23

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007)........................................... 23, 24

*Jaimez v. DAIOHS USA, Inc.,* 181 Cal.App.4th 1286 (2010)............................... 20

*Linder v. Thrifty Oil Co.*, 23 Cal.4th 429 23 Cal.4th 429 at 445-446 (2000) ........ 24

*Sav-on Drug Store, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004) ...................... 23

## CALIFORNIA STATUTES

Bus. & Prof. Code §§ 17200 ........................................................ 8

Labor Code § 226 ............................................................... 8, 19

Labor Code § 226.7(b) .............................................................. 17

Labor Code § 512 .................................................................. 17

Labor Code § 90.5(a) ............................................................... 15


## REGULATIONS

29 C.F.R. § 785.48(b) .............................................................. 13


## RULES

Fed. R. Civ. P. 23 ............................................4, 5, 6, 7, 8, 9, 10, 11, 20, 21, 22


## TREATISES

3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002) .................... 4

Wright, Miller & Kane, *Federal Practice and Procedure* § 1764 (2007 ed.) .......... 9


## OTHER AUTHORITIES

DLSE Enforcement Policies and Interpretations Manual ........................................ 13

SPIRO MOORE LLP

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

**I.      INTRODUCTION AND SUMMARY OF THE ARGUMENTS**

Central Parking System, Inc. ("CPS") implemented two unlawful policies that uniformly affect thousands of hourly-paid employees in California. Based on stipulated evidence, expert statistical analyses show that thousands of class members were regularly unpaid due to CPS's policies.

CPS's "seven-minute rounding rule" shaves off time from an employee's *recorded* actual work hours and deprives employees from being paid wages for all hours worked. This "seven-minute rounding rule" violates California laws that require all hours of work be paid to employees. ***Due to this unlawful rounding rule, CPS employees have been underpaid $5 Million in wages***. On average, each underpaid employee would be entitled to over $3,000 in wages.

CPS's meal policy *automatically* denies payment of a meal premium when meal breaks are less than 30 minutes. CPS programmed this meal policy into an electronic timekeeping system that all California class members are required to use. This meal policy is a per se violation of California laws that require employers to pay an additional hour of pay when it does not provide a meal break of at least 30 minutes during applicable shifts. CPS completely shirks its statutory obligation to gain financial profit. Over 75% of CPS's 5,000 California hourly-paid employees are subject to this unlawful meal policy.

Plaintiff has been and is subject to the same illegal "seven-minute rounding rule" and meal policy as thousands of other CPS employees in California. The facts and legal issues that support his claims are common to thousands of other CPS hourly-paid employees in California.  As a result, he moves to certify three classes in order to efficiently litigate thousands of identical individual claims against CPS.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

II.    **PROPOSED CLASSES**

Plaintiff seeks to certify three proposed classes:

**Rounding Class:** All persons employed by CPS in California as non-exempt hourly-paid employees at any time between July 7, 2006 and the date Notice of Class Certification is mailed.

**Meal Period Class:** All persons employed by CPS in California as non-exempt hourly-paid employees, at any time between July 7, 2006 and the date Notice of Class Certification is mailed, whose Kronos time records show (1) they worked shifts greater than six hours in a day, and (2) they took meal periods during those shifts that were less than 30 minutes.

**Wage Statement Class:** All persons employed by CPS in California as non-exempt hourly-paid employees at any time between July 7, 2009 and the date Notice of Class Certification is mailed.

III.    **STATEMENT OF FACTS IN SUPPORT OF CLASS CERTIFICATION**

A.    **CPS's Recordkeeping System**

CPS is the leading provider of parking and transportation-related services.[1] As a function of its ownership, operation and management of parking facilities, it has employed over 5,000 non-exempt hourly-paid employees across hundreds of facilities in California since 2006.[2]

Throughout the class period, CPS has recorded the hours worked by class members to reflect the actual hours and minutes of work.[3] At the start of the class

---

[1] Declaration of Linh Hua in Support of Plaintiff's Motion for Class Certification ("Hua Decl."), Exhs. 9-10 (Employee Handbooks).

[2] Hua Decl., Exh. 4 (James Dep. Tr. 17-20-22); Exh. 7 (Spec. Interrog. No. 5); Exhs. 9-10 (Employee Handbooks).

[3] Hua Decl., Exh. 4 (Dodd Dep. Tr. 51:17-21); Exhs. 11-12 (Kronos timecard and manual timecard).

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

period, all class members were using paper timecards to record their hours worked.[4] In January 2010, CPS replaced its paper timecards with electronic time entries in Kronos, and that electronic recordkeeping system is currently in place for all class members in California.[5] The same payroll processing system has been in place during the entire class period and is used for all class members in California.[6]

### B.   Sample of Time and Pay Records

The parties stipulated to the production of a sample of time records and pay records for class members ("Sample of Records").[7]  The Sample of Records consists of electronic data from CPS's payroll records (UltiPro), Kronos time records, and converted paper timecards.[8] CPS produced all Kronos records available from its implementation in January 2010 through June 2011.[9]  From a list of 249 CPS locations in which class members were stationed in California, the parties stipulated to a stratified sampling from 37 locations for paper timecards (15% of locations).[10] CPS also produced corresponding pay records to the paper timecards and Kronos time records.[11]

When comparing pay records to time records in the Sample of Records, 8,302 employee pay periods had corresponding pay records to time records.[12]  The

---

[4] Hua Decl., Exh 1 (Stipulation re Facts, ¶¶ 1-5); Exh. 4 (James Dep. Tr. 39:15 – 40:4; 42:9-42:11).

[5] Hua Decl., Exh. 4 (James Dep. Tr. 24:22-24; 25:6-15; 30:8-11; 31:2-5).

[6] Hua Decl., Exh. 5 (Dodd Dep. Tr. 42:4-17).

[7] Hua Decl., Exh 2 (Amended Stipulation Regarding Sample of Time Records and Pay Records). Paragraph 5 of the stipulation states: "The parties stipulate as to the authenticity of The Sample of Records and agree to waive any evidentiary objections to The Sample of Records or any extrapolations drawn therefrom (including extrapolations regarding commonality, typicality, frequency of alleged violations, percentage of employees experiencing alleged violations, and estimation of alleged total damages) based on the methodology by which The Sample of Records was selected, gathered, processed or transmitted."

[8] Declaration of Robert L. Fountain, Exh. 3 (Time and Payroll Records Report, "Sample of Records Report"), p 1.

[9] Hua Decl., Exh. 2 (Amended Stip. Re Sample, ¶ 1.)

[10] Hua Decl., Exh. 2 (Amended Stip. Re Sample, ¶2.); Sample of Records Report, p 1.

[11] Hua Decl., Exh. 2 (Amended Stip Re Sample, ¶ 1.c., 2.d.).

[12] Sample of Records Report, p 2.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

1  parties then stipulated to exclude employee pay periods that contained illegible or
2  missing time punches.[13] As a result, 6,904 employee pay periods and 349
3  employees remain in the Sample of Records with legible and matching pay and
4  time records.[14]

5  ## IV.   CLASS CERTIFICATION IS APPROPRIATE UNDER FEDERAL
6  RULE OF CIVIL PROCEDURE 23

7          Parties seeking class certification bear the burden of demonstrating that they
8  have met each of the four requirements of Federal Rule of Civil Procedure 23(a)
9  and  at least one of the requirements of Rule 23 (b).  *Ellis v. Costco Wholesale*
10  *Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011), citing *Zinser v. Accufix Research*
11  *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), amended by 273 F.3d 1266 (9th
12  Cir.2001).

13          The Rule 23 analysis begins with Rule 23(a).  "Rule 23(a) ensures that the
14  named plaintiffs are appropriate representatives of the class whose claims they wish
15  to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (June 20, 2011).[15]
16  Plaintiff bears the burden of establishing that each of the proposed Classes meets
17  the requirements of Rule 23(a) and one section of Rule 23(b).  *Haley v. Medtronic,*
18  *Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).  However, the requirements of Rule 23
19  "should be liberally construed."  3 Conte & Newberg, *Newberg on Class Actions* §
20  7.20 (4th ed. 2002).

21

22          [13] Hua Decl., Exh. 3 (Amended Stipulation to Exclude Entries from the Sample of Records).

23          [14] Sample of Records Report, p 2.

24          [15] Of course, this case has little in common with *Dukes*.  The legality and adequacy of
25  wage payments is a strict liability issue for which no individual inquiry of intent is required.
   Rounding of pay is unlawful when, over time, it tends to underpay.  That is all that need be
26  shown.  Similarly, a series of policies that require employees to spend time starting computers,
   off-the-clock, for no pay, are unlawful.  This case suffers from none of the classwide core proof
27  issues that plagued *Dukes*, where many thousands of different people made decisions regarding
   promotions of millions of women.  *See, e.g.*, *Ross v. RBS Citizens, N.A.*, ___ F.3d ___, 10-3848,
28  2012 WL 251927 (7th Cir. Jan. 27, 2012) (finding *Dukes* inapposite because the plaintiffs'
   overtime claim required no proof of individual discriminatory intent.)

SPIRO MOORE LLP

SPIRO MOORE LLP

1    When deciding on a certification motion, all factual allegations in Plaintiffs'

2    operative complaint must be accepted as true.  *Arthur Young & Co. v. United States*

3    *Dist. Court*, 549 F.2d 686, 688 n.3 (9th Cir. 1977), *cert. denied* 434 U.S. 829

4    (1977); *Blackie v. Barrack*, 524 F.2d 891, 900 n. 17 (9th Cir. 1975), cert. denied,

5    429 U.S. 816 (1976).  As the Ninth Circuit reiterated in *Moore v. Hughes*

6    *Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983), a limited "inquiry into the

7    substance of a case may be necessary to ascertain satisfaction of Rule 23(a)'s

8    commonality and typicality requirements, [but] it is improper to advance a decision

9    on the merits to the class certification stage."  *Id.* at 480 (citing *Eisen*, 417 U.S. at

10   177-178); see also *Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th

11   Cir. 1996).  "Nonetheless, the district court does not conduct a mini-trial to

12   determine if the class 'could actually prevail on the merits of their claims.' [*Ellis*],

13   at 983 n. 8; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &*

14   *Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th

15   Cir.2010) (citation omitted) (court may inquire into substance of case to apply the

16   Rule 23 factors, however, '[t]he court may not go so far ... as to judge the validity

17   of these claims.')."  *Johns v. Bayer Corp.*, 09CV1935 AJB POR, 2012 WL 368032

18   (S.D. Cal. Feb. 3, 2012).  Instead, at this point, the Court need only determine if the

19   Plaintiff has satisfied Rule 23, not weigh competing evidence.  *Staton v. Boeing*

20   *Company*, 327 F.3d 938 (9th Cir. 2003); *Blackie*, 524 F.2d at, 901 n.17.

21   Evidence put forward at this time is not evaluated on an admissibility

22   standard, such as would be the case for summary judgment or trial.  At the

23   certification stage, "the court makes no findings of fact and announces no ultimate

24   conclusions on Plaintiffs' claims." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D.

25   610, 616 (C.D. Cal. 2008), reversed on other grounds. "[I]n determining whether to

26   certify the class, the district court is bound to take the substantive allegations of the

27   complaint as true." *In re Coordinated Pretrial Proceedings in Petroleum Prods.*

28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie*, 524 F.2d at 901 n.7 (9th Cir. 1975)).  "[T]he court may consider evidence that may not be admissible at trial," *Mazza*, 254 F.R.D. at 616 (citing *Eisen*, 417 U.S. at 178), and a "district court may certify a class without supporting evidence." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Certification]." *Mazza*, 254 F.R.D. at 616.

"The amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie*, 524 F.2d at 905; *Stearns v. TicketMaster Corp.*, 655 F.3d 1013, 1026 (9th Cir.2011) (citing *Blackie* in a case decided after the *Wal–Mart* and *Ellis* decisions).

### A.      This Case Meets the Requirements of Fed. R. Civ. P. 23(a).

A party seeking to certify a class simply must satisfy the four prerequisites enumerated in Rule 23(a).  Plaintiff does so hereil.

#### 1.      The Proposed Class Is Sufficiently Numerous To Satisfy The "Numerosity" Requisite Of Rule 23(a).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable," not impossible.  FED. R. CIV. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  But Plaintiff does not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity; rather, whether joinder is impracticable depends on the facts and circumstances of each case.  *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).

There is no specific number of class members required for certification. "Nonetheless, courts have recognized that the numerosity requirement is generally

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

SPIRO MOORE LLP

1  satisfied when the class is in excess of forty members. *See Jordan v. Los Angeles*
2  *County*, 669 F.2d 1311, 1319 (9th Cir.1982) (finding 39 individuals was likely
3  sufficient number), vacated on other grounds, *County of Los Angeles v. Jordan*, 459
4  U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *Slaven v. BP America, Inc.*, 190
5  F.R.D. 649, 654 (C.D.Cal.2000); *see also e.g. Gay v. Waiters' & Dairy Lunchmen's*
6  *Union*, 549 F.2d 1330 (9th Cir.1997)."  *Charlebois v. Angels Baseball, LP*,SACV
7  10-0853 DOC ANX, 2011 WL 2610122 (C.D. Cal. June 30, 2011).

8          The proposed classes are sufficiently numerous. The proposed class size for
9  the rounding claim is over 5,000 employees,[16] and the proposed class size for the
10  meal period claim is approximately 2,673.[17] As derivative to the wage claims, the
11  Wage Statement class includes thousands of employees.  Similar to how CPS
12  produced records to respond to formal discovery and to compile the Sample of
13  Records, CPS can easily identify class members for the proposed classes.

14                  2.      **Common Issues of Law and Fact Exist, Satisfying The**
15                          **Requirements Of Rule 23(a)(2).**

16          Rule 23(a)(2) requires that "there are questions of law or fact common to the
17  class."  FED. R. CIV. P. 23(a)(2).  To satisfy Fed. R. Civ. P. 23(a)(2), "not all
18  questions of law or fact need to be common."  *Hansen v. Ticket Track, Inc.*, 213
19  F.R.D. 412, 414 (W.D. Wash. 2003).  In fact, a single common question can
20  suffice.  *Haley*, 169 F.R.D. at 648. Here, common issues of law and fact in this
21  action actually predominate over individualized issues, readily satisfying the
22  requirements of Rule 23(a)(2).

23          In *Hanlon v. Chrysler Corp.*, *supra*, 150 F.3d at 1019, the Ninth Circuit ruled
24  that "Fed. R. Civ. P. 23(a)(2) is neither exacting nor difficult to satisfy:

25

26          [16] Hua Decl,, Exh. 7 (Spec. Intrg. No. 5 states 4,936 class members as of October 2010. It
27  is reasonable to expect that now in 2012, the number is class members has increased to over
    5,000.)

28          [17] Sample of Records Report, p 3.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts, even when coupled with disparate legal remedies within the class. . .

The Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal." *Id.*, at 1020.  Therefore, allegations that "a common core of operative facts exists and that [defendant] has engaged in a standard course of conduct towards members of the proposed class" readily satisfy the commonality requirement. *Hansen*, 213 F.R.D. at 415.

The claims in this case raise numerous common questions of fact and law:

1. whether Defendant's policy of rounding actual time worked when calculating pay was used in such a manner that it resulted, over a period of time, in failure to compensate employees properly for all the time they have actually worked;

2. whether Defendant failed to compensate its employees for time worked;

3. whether Defendant failed to provide meal periods to its employees by implementing meal period policies that are per se violations of California law;

4. whether Defendants failed to provide employees with accurate itemized wage statements as required pursuant to Labor Code § 226;

5. whether Defendant's failure to compensate its current and/or former employees for time worked and its failure to provide departing employees all wages due and payable constitutes unfair, unlawful and/or fraudulent business practices under Cal. Bus. & Prof. Code §§ 17200, et seq.

Each of these questions individually constitutes a common issue that is not unique to any individual members of the Classes and can be resolved completely or primarily with common evidence.  In short, Defendant has engaged in a standard course of conduct toward members of the Classes. *See*, *e.g.*, *Negrete v. Allianz Life*

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  *Ins. Co.*, 238 F.R.D. 482, 488 (C.D.Cal. 2006) (finding commonality satisfied
2  where class members' claims "derive from a common core of salient facts, and
3  share many common issues" and granting class certification)

**3.  Plaintiff's Claims Are Typical Of The Class He Seeks To**
**Represent, Satisfying Rule 23(a)(3).**

6  The "typicality" requisite of FED. R. CIV. P. 23(a)(3) turns on whether a
7  sufficient relationship exists between the injury to the named plaintiff and the
8  conduct affecting the class.  Under the requisite's "permissive standards," claims
9  are typical if they are "reasonably co-extensive with those of absent class members;
10 they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d at
11 1020.

12 "The test of typicality 'is whether other members have the same or similar
13 injury, whether the action is based on conduct which is not unique to the named
14 plaintiffs, and whether other class members have been injured by the same course
15 of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)
16 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

17 "[T]he requirement may be satisfied even though varying fact patterns
18 support the claims or defenses of individual class members or there is a disparity in
19 the damages claimed by the representative parties and the other class members."
20 Wright, Miller & Kane, *Federal Practice and Procedure* § 1764 (2007 ed.).  In
21 other words, "[f]actual variations are not fatal to a proposed class when the claims
22 arise out of the same remedial and legal theory."  *Sullivan v. Chase Inv. Services of*
23 *Boston, Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978).  Rather, as the Ninth Circuit has
24 noted, typicality is satisfied so long as the named plaintiff's claims "stem[] from the
25 same event, practice, or course of conduct forms the base of the class claims
26 and [are] based upon the same legal remedial theory."  *Jordan,* 669 F.2d at 1321.

Here, Plaintiff is a current non-exempt, hourly-paid employee of CPS who has worked at multiple facilities in California since July 2009.[18] Like other class members, Plaintiff was subject to the same rounding policy, subject to the same meal period policy, and received the same wage statements.[19] His records show that he was not paid for all hours worked, and he recorded meal periods that were less than 30 minutes during shifts of greater than six hours.[20] At the date Plaintiff filed this action, his records show that CPS failed to pay him $117.79 in wages due to the rounding policy.[21]

### 4. The Proposed Class Representatives And Their Counsel Will Adequately Represent The Interests Of The Class.

The fourth and final Rule 23(a) requirement – adequacy – requires (1) that the proposed representative does not have conflicts of interest with the proposed class and (2) that the representative is represented by qualified counsel. *Hanlon*, 150 F.3d at 1020; *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).  Mere divergence of opinion between the class and its representative is not sufficient.  *See In re Mego Fin. Corp. Sec. Litig*. 213 F.3d 454, 462 (9th Cir. 2000).

In *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), the Ninth Circuit stated two questions that define adequacy of representation: (1) does the representative plaintiff and his counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and his counsel prosecute the action vigorously on behalf of the class?  *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1020.

Both requirements are satisfied here. Plaintiff has no conflicts with the proposed classes. He possesses a strong interest in obtaining damages, penalties, and

---

[18] Declaration of Oscar Munoz in Support of Motion for Class Certification ("Munoz Decl."), ¶ 3.

[19] Munoz Decl., ¶¶ 5-6.

[20] Munoz Decl., ¶ 5; Sample of Records Report, p. 4.

[21] Sample of Records Report, p. 4.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

restitution from CPS for himself and other class members.[22] Plaintiff has competent

and experienced counsel who have succeeded in obtaining class certification on

wage and hour claims and have the unique experience of trying a wage and hour

class action jury trial in this state.[23] Plaintiff's counsel will prosecute the action

vigorously on behalf of the class.

### B.   Certification Under Rule 23(b)(3) is Appropriate.

Under Rule 23(b)(3), certification is proper if (1) questions of law or fact

common to the members of the class predominate over any questions affecting only

individual class members; and (2) class treatment is superior to other available

methods for the fair and efficient adjudication of the controversy.   *Local Joint*

*Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d

1152, 1162-63 (9th Cir. 2001); *Negrete*, 238 F.R.D. at 487, 489.  Here, Plaintiff

satisfies both predominance and superiority, warranting class certification.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v.*

*Windsor*, 521 U.S. 591, 623 (1997).  The Court must find that questions of law or

fact common to the class members predominate over any questions affecting only

individual members.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa*

*Check/Mastermoney Antitrust Litig.)*, 280 F.3d 124, 136 (2nd Cir. 2001) (common

questions predominate where "the issues in the class action that are subject to

generalized proof, and thus applicable to the class as a whole, . . . predominate over

those issues that are subject only to individualized proof.").

The Ninth Circuit looks for "a common nucleus of operative facts and

potential legal remedies," but does not require complete identity among class

members.  *Hanlon*, 150 F.3d at 1022-23.  In *Thomas & Thomas Rodmakers, Inc. v.*

*Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002), the

---

[22] Munoz Decl., ¶ 7.

[23] Hua Decl., ¶¶ 3-9.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

court found class certification appropriate because the case centered on "a common nucleus of operative facts" and because the action focused "on the words and conduct of the defendants rather than on the behavior of individual class members." *Id.* (citations omitted); *see also Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 367 (C.D. Cal. 2009) ("In evaluating predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members.").[24] Plaintiff demonstrates that there are numerous, important questions of law and fact which, as in the cases discussed above, are based on Defendant's conduct and are common to the members of the Classes. Here, the common conduct all arises from questions about the legality of uniform payroll practices and policies.[25]

### 1. Common Legal Issue: CPS's Rounding Policy is Unlawful Because it, Over a Period of Time, Fails to Compensate Employees for All Time Actually Worked

Rounding that, over time, works to the detriment of employees is unlawful under federal law:

> "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.

---

[24] *See* Sample of Records Report.

[25] Many courts have certified classes where the alleged wage and hour violation stems from a common payroll practice. *See e.g.*, *Eldred v. Comforce Corp.*, 2010 WL 812698, *20 (N.D. N.Y. 2010) ("[w]hen plaintiffs are allegedly aggrieved by a single policy of defendants, such as [a] blanket policy ... the case presents precisely the type of situation for which the class action device is suited..."); *Bricker v. Planet Hollywood New York, L.P.*, 2009 WL 2603149, *1 (S.D. N.Y. 2009) ("With respect to commonality, all of the putative class claims arise out of common questions of law and fact relating to Defendants' payroll practices and whether they comply with federal and state wage laws."); *Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009) ("Commonality exists because all class members claim the same common pay practice of Defendants..."); *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224, *8 (M.D. Fla. 2008) (certifying class based on plaintiff's allegation that all piece-rate employee were paid through the same payroll system and that the payroll practices applied to the named plaintiff and other putative class members).

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

SPIRO MOORE LLP

1
2
3

For enforcement purposes ***this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked***.

4    29 C.F.R. § 785.48(b) (emphasis added); *Austin v. Amazon.Com, Inc*., 2010 WL

5    1875811*3 (W.D. Wash. 2010) ("the DOL regulation does not give Amazon a

6    blank check to round time in any manner it sees fit.").  California's Division of

7    Labor Standards Enforcement, in its Enforcement Policies and Interpretations

8    Manual, follows the federal practice:

9    47.2 "Rounding" Practices.  As mentioned above, the federal
10   regulations allow rounding of hours to five minute segments.  There
     has been practice in industry for many years to follow this practice,
11   recording the employees' starting time and stopping time to the nearest
     5 minutes, or to the nearest one-tenth or quarter of an hour.
12   Presumably, this arrangement averages out so that the employees are
     fully compensated for all the time they actually work.  For
13   enforcement purposes this practice of computing working time will be
     accepted by  DLSE,  provided that it is used in such a manner that it
14   will not result, over a period of time, in failure to compensate the
     employees properly for ***all the time they have actually worked***. (See
15   also, 29 CFR § 785.48(b)).

16   DLSE Enforcement Policies and Interpretations Manual, at 47.2 (emphasis added).

17          Rounding-based claims fundamentally present a matter of uniform

18   application of employer payroll policies and are frequently certified.  *See, e.g.,*

19   *Cervantez v. Celestica Corp*., 253 F.R.D. 562 (C.D. Cal. 2008).  Other courts have

20   easily reached the same conclusion, certifying "rounding" classes or collective

21   actions.  *See e.g., Nicholson v. UTI Worldwide*, 2011 WL 1775726 (S.D. Ill. 2011)

22   (certifying a class of fork-lift drivers subject to common "time-clock rounding"

23   policy); *Sloan v. Renzenberger, Inc.*, 2011 WL 1457368 at *3 (D. Kan. 2011)

24   (conditionally certifying an FLSA collective action alleging unlawful "rounding.");

25   *Flott v. Hair Salons, Inc*., 2010 WL 5093923, at *1 (D. Neb. 2010) (approving

26   settlement of previously certified class alleging that employer's "rounding"

27   practices violated federal and state law); *Fisher v. Michigan Bell Telephone Co*.,

28

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1  665 F.Supp.2d 819 (E.D. Mich. 2009) (conditionally certifying collective action
2  alleging employer's "rounding policy" violated FLSA); *Gil v. Solectron Corp*..
3  2009 WL 88346 (N.D. Cal. 2009) (conditionally certifying FLSA collective action
4  alleging that employer's policy of "rounding" time resulted in under-recording of
5  hours worked); *Longcrier v. HL-A Co., Inc*., 595 F.Supp.2d 218 (S.D. Ala. 2008)
6  (same).

7          Rounding policies that favor the employer are unlawful.  Similar to the
8  instant case, in *Gonzalez v. Farmington Foods, Inc.*, 296 F.Supp.2d 912, 933 (N.D.
9  Ill, 2003), the employer used Kronos to electronically records employees' hours
10  worked.  The Court ruled against the employer and held that "editing of employees'
11  swipe in and swipe out times may, in fact, constitute major discrepancies between
12  the actual hours worked by employees (based on the exception report with punch
13  detail) and the hours for which employees are paid (based on the punch detail
14  report)."

15          In *Austin v. Amazon.com, Inc.*, 2010 WL 1875811 (W.D. Wash. May 10,
16  2010), the defendant argued that it was legally permitted to round time.  Rejecting
17  defendant's arguments, the Court stated that the "DOL regulation does not give
18  [defendant] a blank check to round time in any manner it sees fit." *Id*. at *3.  The
19  plaintiff's allegations were based on defendant's manipulation of rounding under
20  29 C.F.R. 785.48(b) in an unauthorized manner that resulted in employees not
21  being fully compensated for all the time they actually worked. *Id*.  Plaintiff's
22  arguments for unpaid wages were "distinguishable from [defendant's] argument
23  that it is legally permitted to round time pursuant to the DOL regulation." *Id*.

24          In *Eyles v. Uline, Inc*., 2009 WL 2868447 (N.D. Tex. Sept. 4, 2009), the
25  Court held that rounding practices that favor the employer do not meet the
26  conditions of 29 C.F.R. 785.48(b).  The Court granted summary judgment on the
27  grounds that rounding resulted in unpaid overtime wages.

28

SPIRO MOORE LLP

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1    CPS's practice of rounding time to the detriment of its employees

2    contravenes California's policies:

3       It is the policy of this state to vigorously enforce minimum labor
        standards in order to *ensure* employees are *not required or permitted*
4       to work under substandard unlawful conditions…and to protect
        employers who comply with the law from those who attempt to gain a
5       competitive advantage at the expense of their workers by failing to
        comply with minimum labor standards.
6
     Cal. Lab. Code § 90.5(a)(emphasis added)
7
        This legal issues regarding CPS's "seven-minute rounding rule" are common
8
     to all class members and suitable for determination in a class action.
9
                 **2.     Common Factual Issue: CPS's Uniform Rounding Policy**
10
        CPS has had the same "seven-minute rounding rule" in place for all class
11
     members during the entire class period.[26] Under this rounding rule, CPS
12
     calculates the "actual minutes and hours" of work, adds increments of actual time
13
     worked in each shift, and then rounds that time to the closest quarter hour.[27]
14
        In early 2007, CPS provided its managers with a "spreadsheet that was
15
     devised to help the management team not have to be the math wizards" when
16
     rounding time worked.[28] Managers would simply enter actual time punch records
17
     into the spreadsheet, the spreadsheet contained programming macros that would
18
     automatically round the actual hours worked, and the spreadsheet would then be
19
     e-mailed to payroll for processing.[29] Prior to 2007, managers were required to
20
     manually round time records using the same "seven-minute rounding rule."[30]
21
     After 2010, Kronos was programmed to perform the same "seven-minute
22

23   _____

24       [26] Hua Decl., Exh 4 (James Dep. Tr. 45:8-14; 124:6-12); Exh 5 (Dodd Dep. Tr. 46:6 –
     49:12; 117:3-12).
25
         [27] Hua Decl., Exh 5 (Dodd Dep Tr. 46:6 – 49:12; 52:1-6; 66:22-67:14).
26       [28] Hua Decl., Exh. 5 (Dodd Dep. Tr. 83:19-85:6); Exh. 8 (Spec. Intrg. No. 9); Exh. 13
     (spreadsheet provided to CPS managers containing macros that automatically round hours
27   worked).
         [29] Hua Decl., Exh. 3 (James Dep. Tr. 45:22-25; 47:22-48:2).
28       [30] Hua Decl., Exh. 5 (Dodd Dep. Tr. 83:19-85:6; 116:1-7).

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

1  rounding rule" before hours worked were sent to payroll.[31]

2         In addition to CPS's rounding rule, class members could be disciplined if

3  they punched in after the start of their scheduled shifts, but they would not be

4  disciplined if they punched in before the start of their schedule shift.[32] CPS's

5  handbook has been in effect during the entire class period,[33] and it states:

6         You must report for work on time and be in uniform or
          appropriate business dress…**You should be ready to begin**
7         **work immediately after clocking in. At the end of your shift,**
          **you should clock out before preparing to leave work**.
8         Washing up, changing clothes, etc. should be done after you
          clock out.

9

10        From the Sample of Records, after computing actual hours worked from CPS's

11 time records and computing actual wages paid from CPS's pay records, statistical

12 analyses reveal that CPS underpaid class members over $400,000 across at least 115

13 sampled class members due to its rounding rule.[34] Extrapolating out to the whole

14 class, more than 1,600 class members would be underpaid wages due to CPS's

15 rounding rule. ***Each class member who was underpaid due to CPS's rounding***

16 ***policy lost an average of more than $3,000 during their employment with CPS.***[35]

17 When extrapolating from the Sample of Records to a class of over 5,000 class

18 members,[36] ***CPS underpaid class members more than $5.7 Million in wages due to***

19 ***its rounding policy.***[37]

20

21

22
   _____

23        [31] Hua Decl., Exh. 5 (Dodd Dep. Tr. 83:19-85:6).

24        [32] Hua Decl., Exh. 4 (James Dep. Tr. 73:9-74:5).

     [33] Hua Decl., Exh. 4 (James Dep. Tr. 113:4-116, 114:23-115:6); Exhs 9-10 (Employee
25 Handbooks)(emphasis added).

26        [34] Sample of Records Report, p 2.

          [35] Sample of Records Report, pp 2-3.

27        [36] Hua Decl,, Exh. 7 (Spec. Intrg. No. 5 states 4,936 class members as of October 2010. It
   is reasonable to expect that now in 2012, the number is class members has increased to over
28 5,000.).

          [37] Sample of Records Report, p 3.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**3.      Common Legal Issue: CPS's Meal Policy Violates Statutory Requirements**

Facts surrounding CPS's meal policy are common to all class members because CPS automated this policy in Kronos for all hourly-paid California employees. Additionally, the laws that define an employer's obligation to pay an extra hour of wages for meal breaks of less than 30 minutes are common to all class members. CPS may not ignore the statutory requirements and redefine its obligation to pay meal premiums to employees.

"California law has guaranteed to employees wage and hour protection, including meal [] periods intended to ameliorate the consequences of long hours." *Brinker Rest. Corp. v. Superior Court (Hohnbaum)*, 53 Cal. 4th 1004, 1017 (2012).

Regarding first meal periods, if the employer employs an employee for a work period greater than six hours per day, it must provide the employee with a meal period of not less than 30 minutes which may not be waived.  Cal.Lab.Code § 512.  Regarding second meal periods, if the employer employs an employee for a work period of more than 12 hours, it must provide the employee with a second meal period of not less than 30 minutes which may not be waived." *Id.*  The Supreme Court recently held that the employer satisfies the obligation of "providing" a meal period if it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp.* at 1040.

If an employer fails to provide an employee a meal period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided. Cal.Lab.Code § 226.7(b).

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

### 4.    Common Factual Issue: Uniform Meal Policy

CPS has maintained the same meal period policy for all class members during the entire class period.[38] However, after Kronos was implemented in January 2010, CPS modified its timekeeping system so that meal premiums would be automatically denied if meal periods were less than 30 minutes.[39]  This meal premium policy applied to all class members after Kronos was implemented: (a) meal periods less than 30 minutes would not be paid a meal premium,[40] (b) first meal premium is applied if there is no break in a six hour shift,[41] (c) second meal premium is applied at ten hours if there is no break,[42] (d) if employees take a meal break that is less than 25 minutes, it is considered paid time and no meal premium is paid,[43] and (e) if a meal period is at least 25 minutes and less than 30 minutes, the meal break is unpaid and the employee does not receive a meal premium.[44] Furthermore, CPS does not look to actual time records to assess meal premiums; meal premiums are assessed in Kronos based on CPS's rounded time records.[45]

> Q. If that misstates your testimony, you can correct me. I'm trying to get an understanding of how it works in Kronos when those two things interact.
>
> A. I think I said a moment ago that *if the employee has a break of any length, they don't have a meal premium*. But if the break is less than 25 minutes, it's considered a paid break.
>
> Q. Okay. So if an employee gets – receives a break for 26 minutes, which is less than the 30 minutes required under California law, would they receive a meal premium?

---

[38] Hua Decl., Exh. 1 (Stipulation Re Facts, ¶ 7). Although CPS had employees sign meal period waivers, those waivers do not apply to shifts that are greater than six hours, Cal.Lab.Code section 512 (Hua Decl., Exh. 15).

[39] Hua Decl., Exh. 5 (Dodd Dep. Tr. 103:21-24); Exh. 6 (Pearson Dep. Tr. 64:4-9).

[40] Hua Decl., Exh. 4 (James Dep. Tr, 125:16-21; 127:8-10); Exh. 5 (Dodd Dep. Tr. 108:7-14).

[41] Hua Decl., Exh. 5 (Dodd Dep. Tr. 102:3-8).

[42] Hua Decl., Exh. 5 (Dodd Dep. Tr. 102:3-8).

[43] Hua Decl., Exh. 5 (Dodd Dep. Tr. 102:23-103:6; 103:6-103:12).

[44] Hua Decl., Exh. 4 (James Dep. Tr. 128:16-128:21); Exh. 5 (Dodd Dep. Tr. 59:18-59:23; 108:15-108:21).

[45] Hua Decl., Exh. 8 (Spec. Intrg. No. 20).

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

SPIRO MOORE LLP

A. They would have an unpaid 30-minute break -- an unpaid 26-minute break, and they would not get a meal premium.

Hua Decl., Exh. 5 (Dodd Dep. Tr. 108:7-14) (emphasis added).

In fact, CPS performs internal audits of employee time records and has found instances in which meal periods were missed or less than 30 minutes in length.[46]

The Sample of Records reveals that **_75.6%_** of class members recorded meal periods of less than 30 minutes during shifts that were greater than six hours.[47] Based on CPS's automated Kronos meal premium policy, over 2,000 class members would be precluded from receiving a meal premium when extrapolated out to the proposed meal period class.[48]

### 5.    Common Legal Issue: Wage Statements and UCL

Plaintiff's wage statement and UCL claims are derivative to the rounding claim.  Under Labor Code section 226, employer are required to furnish wage statements that accurately itemize nine specified categories of information. However, wage statements list only the rounded hours worked and not the actual hours worked thereby violating subsection (1), (2), and (5) of Labor Code section 226(a).

Where the employees suffer injury as a result of the employer's knowing and intentional failure to accurately itemize wage statements, the employees are entitled to recovery fifty dollars for the initial pay period and one hundred dollars for each subsequent pay period in which a violation occurs.  Cal. Lab. Code § 226(e).  The aggregate penalty for inaccurate wage statements will not exceed $4,000 per individual.  *Id.*

In *Elliot v. Spherion Pacific Work, LLC* (C.D.Cal.2008) 572 F.Supp.2d 1169, the court listed the range of injuries in the cases plaintiff had cited to show that no

---

[46] Hua Decl., Exh. 16 (CPS internal audit of timecard).

[47] Sample of Records Report, p 3.

[48] Sample of Records Report, p 3.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

injury was necessary: "These injuries included the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." *Jaimez v. DAIOHS USA, Inc.,* 181 Cal.App.4th 1286, 1306 (2010). "While there must be some injury in order to recover damages, a very modest showing will suffice." *Jaimez,* at 1306.

### 6.   Common Factual Issue: Wage Statements

All class members are paid every two weeks during the class period.[49] Those checks are regularly generated at headquarters in Nashville, Tennessee and sent to California for distribution to class members.[50] The wage statements are generated to be identical in format.

Here, class members are injured because CPS's "seven-minute rounding rule" and the inaccurate representation of hours worked on wage statements results in class members not being paid for all hours worked, and class members would need to meticulously reanalyze time records to compute actual hours worked.

### C.   CLASS-ACTION TREATMENT IS SUPERIOR TO INDIVIDUAL ACTIONS.

Rule 23(b)(3) also requires this Court to determine whether "a class action is superior to other available methods for a fair and efficient adjudication of the controversy."  A class action is superior to other methods of litigation "[w]here class wide litigation of common issues will reduce litigation costs and promote greater efficiency" and where "no realistic alternative exists to class wide treatment." *Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).  Rule 23(b)(3) lists four specific factors to be considered in deciding

---

[49] Hua Decl., Exh. 4 (James Dep. Tr. 32:24 – 33:1); Exh. 14 (wage statements).
[50] Hua Decl., Exh. 4 (James Dep. Tr. 52:18-21; 52:24 – 53:7; 53:9-11; 53:13-18).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   superiority.  In addition to those four factors, additional factors have been identified

2   as affirming the superiority of employment law class actions.

3               **1.      Based On The Nature And Size Of The Claims, Class**

4                        **Members Have Little Incentive To Bring Individual Actions.**

5        The first factor to be considered is the interest of each class member in

6   "individually controlling the prosecution or defense of separate actions."  Fed. R.

7   Civ. P. 23(b)(3)(A).  Here, any such interest is minimal because, while the

8   aggregate damages of the class members may be large, the damages of each

9   individual class member will be too small to warrant pursuit of individual claims.

10  *See Hanlon*, 150 F.3d at 1023.  In fact, a class action is the only feasible means by

11  which individual employees who are victims of Defendant's employment practices

12  can hope to obtain any cost-effective remedy.  Each employee's prospective

13  recovery is insufficient to motivate any individual employee to pursue litigation

14  because this fairly small amount pales in comparison to the significant time and

15  money routinely expended during litigation.  In that regard, any suggestion that

16  individual class members have a strong interest in individually controlling their

17  own litigation is both unrealistic and contrary to the philosophy of Rule 23.  As

18  Judge Weinfeld acknowledged in *duPonte Glore Forgan, Inc. v. American*

19  *Telephone and Telegraph Co.*, 69 F.R.D. 481 (S.D.N.Y. 1975):

20          [T]he time-cost factor of legal fees in view of the vigor of Defendant's
            opposition make it uneconomical to proceed with the suit on an
21          individual basis even assuming an ultimate recovery – in fact,
            Monsanto would, if required to proceed on an individual basis, forego
22          its claim ... Thus the assertion that this action will not go forward at all
            if class action status is denied is plausible. The hard fact is that
23          economic reality indicates the likelihood that unless this action is
            permitted to proceed as a class suit, it is the end of this litigation.
24

25  *Id.* at 487.  In other words, "[t]he class action is one of the few legal remedies the

26  small claimant has against those who command the status quo."  *Eisen v. Carlisle*

27  *& Jacqueline*, 417 U.S. 156, 186 (1974) (Douglas, J., conc. and diss. in part).

28

SPIRO MOORE LLP

1   If Plaintiff cannot prosecute his relatively modest monetary claims on a
2   class-wide basis, he and the Classes will be left without recourse or remedy. The
3   United States Supreme Court aptly explained that "[t]he policy at the very core of
4   the class action mechanism is to overcome the problem that small recoveries do not
5   provide the incentive for any individual to bring a solo action prosecuting his or her
6   rights." *Amchem Prods.*, 521 U.S. at 617.  Here, a lawsuit to recover relief for harm
7   suffered due to the improper and unlawful employment practices of a large and
8   powerful corporation like CPS is by its very nature difficult and costly.  Class
9   members could not afford to undertake individual litigation against Defendant to
10  recover the modest damages that would be at issue.  As a result, all class members
11  would be denied the opportunity to receive meaningful redress against Defendant.
12  Therefore, because the class action mechanism was designed to thwart such
13  injustice, class certification is particularly appropriate here.

14              2.       **Concentrating Class Claims in a Single Forum Is Desirable.**

15  Another factor to be considered is the desirability "of concentrating the
16  litigation of the claims in the particular forum."  *See* Fed. R. Civ. P. 23(b)(3)(C).
17  The United States District Court for the Central District of California is not only an
18  appropriate forum for this class action, but the best and most logical forum. This
19  forum is convenient for the parties and their counsel.  First, the named Plaintiff
20  resides in the California and members of the Classes currently reside and/or have
21  resided in California.  Second, Defendant is and has been, at all times relevant to
22  this lawsuit, a corporation authorized to conduct and actually conducting business
23  in California and in fact does conduct substantial business within the Central
24  District.  Plaintiff and Defendant are within this Court's jurisdiction and based on
25  grounds of diversity jurisdiction under CAFA, this Court is the appropriate forum
26  for this suit.  Therefore, this forum is a "logical venue for concentration of claims."
27  *Hanlon*, 150 F.3d at 1023.

28

SPIRO MOORE LLP

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

### 3.     No Significant Management Difficulties Are Present.

The Court must compare "the difficulties likely to be encountered in the management of a class action" with other available alternatives.  *See* Fed. R. Civ. P. 23(b)(3)(D).  Management of this case as a class action will not involve such difficulty that individual actions would be a better way of resolving this controversy.  Liability to the Classes will be determined on the basis of common proof of the practices at issue and the common fact of damage to all class members.

With respect to the need for individualized damage determinations, as discussed above, "The amount of damages is invariably an individual question and does not defeat class treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  With respect to how those damages will be proven, they can be determined through the use of well-established procedures, including surveys, questionnaires, representative sampling, and statistical extrapolation. *See, e.g., Capitol People First v. Dept. of Developmental Serv.*, 155 Cal. App. 4th 676, 692-93 (2007); *Sav-on Drug Store, Inc. v. Superior Court*, 34 Cal. 4th 319, 333, n.6 (2004); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 750 (2004) (sampling in a class action is proper since it "does not dispense with proof of damages but rather offers a different method of proof").

The claims in this matter will be proven with Defendant's time records and pay records.  Plaintiff will present calculations generated from those records to precisely calculate the negative impact of rounding on employees and, at the same time, determine the base amount owed to each Class Member, before interest and related penalties.  The management of the trial in this matter will be relatively simple, despite a Class of over 5,000 individuals.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SPIRO MOORE LLP

### 4.      Insulation From Fear of Retaliation by the Employer Renders Wage and Hour Class Actions Superior.

Class actions are superior to individual litigation in that they provide current employees with insulation from fear of retaliation by their employer:

> A second factor in favor of class actions for these cases, as noted in *Bell,* is that a current employee who individually sues his or her employer is at greater risk of retaliation. We have recognized that retaining one's employment while bringing formal legal action against one's employer is not "a viable option for many employees."

*Gentry v. Superior Court*, 42 Cal. 4th 443, 459 (2007).  And federal courts, recognizing this real potential for retaliation by employers, have held that the potential for retaliation in employment litigation is an important justification for class certification, even where it was questionable that numerosity could be satisfied.

### 5.      Uncertainty About Legal Rights Would Deter Individual Actions, Rendering Class Resolution Superior.

Class actions are also superior to individual litigation because many individuals may be unaware that their rights have been violated.  This is particularly true in employment litigation class actions, where the employee may be unaware of the wrongfulness of the employer's conduct:  "Similarly, it may often be the case that the illegal employer conduct escapes the attention of employees." *Id.* at 461.  And because overtime and other wage payment laws are often complicated, even sophisticated employees may be unaware that their rights have been violated.  *Id.*  In this matter, it is unlikely that any significant portion of the Classes is aware of the variety of obligations imposed on their employer by the Labor Code.  That lack of awareness, alone, renders individual actions substantially inferior to a class-wide adjudication of Plaintiff's claims.

1

2

**6.      Class Actions Provide For Uniform Enforcement Of Employees' Rights.**

3

4

5

6

7

8

9

10

11

In addition to insulating current employees from the fear (justified or otherwise) of retaliation and providing redress to employees unaware of the full extent of their rights, class actions provide a more efficient method for enforcing the statutory policies of this state.  Trial courts should consider "the role of the class action in deterring and addressing wrongdoing." *Linder v. Thrifty Oil Co*., 23 Cal.4th 429 23 Cal.4th 429 at 445-446 (2000) (quoting *Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385-386 (conc. opn. of Tobriner, J.)).  In the wage and hour context, class actions are essential to effective deterrence of wrongful conduct.  *Gentry*, *supra*, 42 Cal.4th at 462 (quoting *Bell*).

12

13

**V.      CONCLUSION**

14

15

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant class certification and certify the three proposed classes.

16

17

Dated: January 7, 2013                    Respectfully submitted,

18

SPIRO MOORE LLP

19

20

By:___/s/_____

21

Linh Hua

22

*Attorneys for Plaintiff Oscar Munoz*

23

24

25

26

27

28

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

SPIRO MOORE LLP